## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN

JANE DOE, through her next friend,

AMY SCHWARTZ,                                           Hon. _____

      Plaintiff,                                         Case: _____

v.

GULL LAKE COMMUNITY SCHOOLS,
CHRISTOPHER RUNDLE,
Former Superintendent, in his Official and Individual Capacities;
DON EASTMAN,
Principal, in his Official and Individual Capacities;
JOHN ROE 1,
Tennis Coach, in his Official and Individual Capacities;
LISA ANDERSON,
Title IX Compliance Officer and Assistant Superintendent of Finance and Operations,
in her Official and Individual Capacities;
OTHER UNIDENTIFIED ROES,
 in their Official and Individual Capacities,

      Defendants,

Karen Truszkowski (P56929)          Julie A. Jacot (P43443)
Temperance Legal Group PLLC         Jacot Law PLLC
503 Mall Court #131                 1044 N. Irish Road, Ste A
Lansing, MI  48912                  Davison, MI  48423
844-534-2560 phone                  810-653-9526 phone
800-531-6527 fax                    810-658-2444 fax
Karen@temperancelegalgroup.com      juliejacotlaw@gmail.com

## COMPLAINT AND JURY DEMAND

Plaintiff, JANE DOE, through her next friend, AMY SCHWARTZ, by and through her attorneys, KAREN TRUSZKOWSKI and JULIE A. JACOT, hereby files the following complaint against Defendants as captioned above.

### I. JURISDICTION AND VENUE

1.  This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331, which gives district courts jurisdiction over all civil actions arising under the Constitution, laws, and treaties of the United States.

2.  This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1343, which gives district courts original jurisdiction over (a) any civil action authorized by law to be brought by any person to redress the deprivation, under color of any State Law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States; and (b) any civil action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of the civil rights.

3.  Plaintiff brings this action to redress a hostile educational environment pursuant to Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 (a), as more fully set forth herein.

4.  This is also an action to redress the deprivation of Plaintiff's constitutional rights under the Fourteenth Amendment of the United States Constitution pursuant to 42 U.S.C. § 1983.

5.  Venue is proper in this district pursuant to 28 U.S.C.  § 1391 (b), since all defendants reside or resided in this district and the events giving rise to the claims occurred in this district.

## II. THE PARTIES

6.   At all material times Plaintiff was a resident of Kalamazoo County, State of Michigan.

7.   At the time of events complained of herein, Plaintiff was a student attending Gull Lake High School, a high school in the Defendant GULL LAKE COMMUNITY SCHOOLS ("School District").

8.   The Defendant School District is a public educational institution located in Kalamazoo County, State of Michigan.

9.   At all material times, Defendant CHRISTOPHER RUNDLE ("Rundle"), in his official and individual capacities, worked in Kalamazoo County, State of Michigan.

10.   During all material times, Rundle was an agent and/or employee of Defendant School District, acting or failing to act within the scope, course, and authority of his employment and his employer.

11.   At all material times, DON EASTMAN ("Eastman"), in his official and individual capacities, worked in Kalamazoo County, State of Michigan.

12.   During all material times, Eastman was an agent and/or employee of Defendant School District, acting or failing to act within the scope, course, and authority of his employment and his employer.

13.   At all material times, JOHN ROE1[1] ("ROE1"), in his official and individual capacities, worked in Kalamazoo County, State of Michigan.  ROE1 is the father of the alleged assailant JOHN ROE2.

---

[1] A pseudonym identifies JOHN ROE 1, to protect the identity of JOHN ROE 2, the alleged assailant in the within action.  JOHN ROE 1 is JOHN ROE 2's father.

14. During all material times, ROE1 was an agent and/or employee of Defendant School District, acting or failing to act within the scope, course, and authority of his employment and his employer.

15. At all material times, LISA ANDERSON ("Anderson"), in her official and individual capacities, worked in Kalamazoo County, State of Michigan.

16. At all material times, LISA ANDERSON was an agent and/or employee of Defendant School District, acting or failing to act within the scope, course, and authority of her employment and her employer.

17. At all material times, Defendants "UNIDENTIFIED ROES" in their official and individual capacities, worked in Kalamazoo County, State of Michigan.

18. At all material times, "Unidentified Roes" were agents and/or employees of Defendant School District, acting or failing to act within the scope, course, and authority of their employment and their employer.

### III.  APPLICABLE LAW AND POLICY

19. Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. § 1681 (a), states that:

> No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefit of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance…

20. Title IX is implemented through the Code of Federal Regulations.  See 34 C.F.R. Part 106.

21. 34 C.F.R. § 106.8 (b) provides:

> …A recipient shall adopt and publish grievance procedures providing for prompt and equitable resolution of student and employee complaints alleging any action which would be prohibited by this part.

22.   In *Gebser v. Lago Vista Independent School District*, 524 U.S. 274 (1988), the United

States Supreme Court recognized that a recipient of federal educational funds intentionally

violates Title IX, and is subject to a private damages action, where the recipient is

"deliberately indifferent" to known acts of teacher-student discrimination.

23.   In *Davis v. Monroe County Board of Education*, 526 U.S. 629 (1999), the United States

Supreme Court extended the private damages action recognized in *Gebser* to cases where

the harasser is a student, rather than a teacher.

24.   *Davis* held that a complainant may prevail in a private Title IX damages action against a

school district in cases of student-on-student harassment where the funding recipient is:

> a) deliberately indifferent to sexual harassment of which the recipient has
> actual knowledge, and
> b) the harassment is so severe, pervasive, and objectively offensive that it
> can be said to deprive the victims of access to the educational
> opportunities or benefits provided by the school.

> *Davis*, 526 U.S. at 1669-76.

25.   The Fourteenth Amendment to the United States Constitution provides in pertinent part that

no State shall "deny to any person within its jurisdiction the equal protection of the laws."

U.S. Const. amend. XIV, § 1.

26.   At MCL 380.1311(2), Michigan law provides that "If a pupil…commits criminal sexual

conduct in a school building or on school grounds, the school board, or the designee of the

27.   The Gull Lake School District's Harassment Policy defines sexual harassment to include:

> A.   Verbal: The making of written or oral sexual innuendoes, suggestive comments,
> jokes of a sexual nature, sexual orientation, sexual propositions, or threats to a
> fellow student, staff member, or other person associated with the District.

> B.   Nonverbal: Causing the placement of sexually suggestive objects, pictures, or
> graphic commentaries in the school environment or the making of suggestive or

insulting gestures, sounds, leering, whistling, and the like, to a fellow student, staff member, or other person associated with the District.

C.  Physical Contact: Threatening or causing unwanted touching, contact, or attempts at same, including patting, pinching, pushing the body, or coerced sexual intercourse, with a fellow student, staff member, or other person associated with the District.  (Exhibit A, p. 23)

28.  The Gull Lake School District's Harassment Policy states that allegations of harassment

will be addressed in the following manner:

> The student may submit a report in writing, by telephone, or in person. The reporting student should provide the name of the person(s) whom he/she believes to be responsible for the harassment and the nature of harassing incident(s).
> The report shall be investigated in a timely and confidential manner. While a charge is under investigation, no information is to be released to anyone who is not involved with the investigation, except as may be required by law or in the context of a legal or administrative proceeding. No one involved will discuss the subject outside of the investigation.
> If the investigation reveals that the complaint is valid, then appropriate remedial and/or disciplinary action will be taken promptly to prevent the continuance of the harassment or its recurrence...
> Some forms of sexual harassment of a student by another student may be considered a form of child abuse, which will require that the student-abuser be reported to proper authorities.  (Exhibit A, p. 24)

29.  The Gull Lake School District also has an Aggressive Behavior Policy, which reads as

follows:

> No student shall engage in, or threaten to engage in, physical action upon an individual.
>
> Physical assault at school against a District employee, volunteer or contractor which may or may not cause injury may result in charges being filed. Physical assault is defined as "intentionally causing or attempting to cause physical harm to another through force or violence."
>
> Any statement or non-contact action that a staff member, student, or other person associated with the District feels to be a threat will be considered a verbal assault as will profanity directed toward a staff member in a threatening tone. Use of profanity or vulgar language is not accepted.  (Exhibit A, p. 20-21)

30.   The Gull Lake School District's Code of Conduct provides disciplinary action in the event of Sexual Harassment or intimidation.  (Exhibit A, p. 28-30)

## IV.  COMMON ALLEGATIONS

31.   At all material times, the School District was receiving federal funding, as contemplated by Title IX, 20 U.S.C. § 1681, *et seq*.

32.   The School District implemented and executed policies and customs regarding the events that resulted in the deprivation of Plaintiff's constitutional, statutory, and common-law rights.

33.   The School District is responsible for ensuring that all its employees are properly trained and supervised to perform their jobs.

34.   The School District is responsible for the acts and omissions of its employees.

35.   Plaintiff JANE DOE, a female, was a minor at the time of the assaults that are the subject of this complaint and is still a minor.

36.   At the time of the assaults, fellow Gull Lake Community Schools student JOHN ROE2 was a minor with a documented history of previous suspensions for violating the sexual assault policies of the Gull Lake School District.

37.   Plaintiff, a freshman, and Roe2, a junior, were acquainted as both were avid tennis players on the Gull Lake High School tennis team(s).

38.    Roe2 is the son of the Defendant Roe1, who was the Gull Lake High School tennis coach until approximately March 2017.

39.   John Roe2, in violation of the Defendant School District Facility Security Policy, possessed a key to a School District maintenance shed ("shed") used to hold athletic equipment. (Exhibit B)

40. Upon information and belief, Defendant Roe1 gave this key to his son Roe2 in Roe1's official capacity as tennis coach in violation of the Defendant School District's policy that forbids students from possessing keys for their own use.

41. On two separate occasions in April 2016, Roe2 took Jane Doe to the "shed" where he blocked the exit and prohibited Jane Doe from exiting.

42. On both occasions, Roe2 forced Jane Doe to perform oral sex on him, without Jane Doe's consent, and despite Jane Doe telling Roe2 "NO" more than once.

43. Because of Roe2's notoriety in the school as a prominent athlete, Jane Doe was reluctant to report what had happened to her to school officials nor did Jane Doe tell her parents.

44. Jane Doe developed depression, anxiety, and she became increasingly withdrawn from her family and friends.

45. Roe2 continued to harass and intimidate Jane Doe throughout the remainder of the school year with physical assaults.  At other times John Roe2 made verbal comments to Jane Doe in the school hallway in front of Jane Doe's friends.

46. Roe2 would punch Jane Doe on her arms whenever she passed Roe2 in the school hallway, resulting in bruising on her arms.  Roe2 had an ominous and threatening look in his eyes during these assaults.

47. Jane Doe internalized her feelings.  Without much needed help, she did not know how to cope with the trauma Roe2 had perpetrated on her.

48. In the summer of 2016, Jane Doe's anxiety became increasingly worse, resulting in extreme anger and combative behavior.  Jane Doe's relationship with her family, particularly her parents, suffered.

49. Jane Doe's parents came to realize that something was wrong with Jane.  Their previously carefree, talkative daughter was now so very angry and was experiencing anxiety attacks and panic attacks seemingly "out of nowhere."

50. Jane Doe's parents did not know how to help their daughter, however, because she was not communicating, she was keeping everything inside.

51. Because Jane Doe was "so on edge," Jane's mother thought Jane was on the verge of a break down and sought medical help for Jane.

52. Jane Doe's doctor prescribed a low dose medication to help ease Jane's extreme anxiety.

53. As the new school year approached (2016-2017), Jane Doe became even more anxious and afraid, knowing that she would have to be in the presence of Roe2.

54. Shortly before school began, Jane Doe's mother took Jane for a follow up appointment with the doctor during which Jane pleaded for a higher dose of the anti-anxiety medication.  Jane told the doctor "I don't want to feel my feelings, you need to make them stop."

55. After the 2016-2017 school year began, Roe2 picked up where he had left off at the end of the prior school year, continuing the harassment and intimidation of Jane.

56. Roe2 would punch Jane in the arm whenever he passed by her, being very careful to keep his behavior out of sight of any authority figure.   Although Roe2 did not verbally taunt Jane Doe, he consistently had an ominous and threatening look in his eyes.

57. At the end of the school's first trimester, Roe2 cornered Jane Doe in a hallway when no one else was around.  Roe2 grabbed Jane around the throat and squeezed, choking Jane to the point she could not breathe.  While choking her, Roe2 slammed Jane Doe up against a wall, then suddenly let go and walked away as if nothing had happened.  John Roe2 had a blank threatening stare in his eyes during this attack.

58. According to her mother, when Jane Doe came home from school that day, Jane was "freaked out."  Still Jane Doe did not tell her parents what had happened.

59. That same evening, however, Jane Doe's mother found out about the sexual assaults, the ongoing physical assaults and the emotional intimidation from a concerned source.[2]

60. The next morning, Jane Doe's mother met with Principal Eastman, explained what had occurred and requested that her daughter be protected from Roe2.

61.  Eastman promised Jane's mother that the school would investigate and figure out "how this could happen."  Eastman said the school would take steps to ensure that this type of thing never happened again and promised that the school would protect Jane.

62. Jane Doe's mother also spoke to Superintendent Rundle on November 5, 2016.  Rundle told Jane Doe's mother "we will do our best."

63. On November 22, 2016, a meeting was held with Jane Doe, Jane Doe's parents, Principal Eastman and Lisa Anderson, the school's Title IX Compliance Officer.

64. During this meeting, Anderson told Jane Doe that she did not have to answer any questions if she did not want to.

65. Jane Doe, still struggling with her emotions and the trauma, was understandably reluctant to speak about being sexual assaulted in front of a group of people, especially with her father and the male principal present.

66. The next few weeks were difficult for Jane Doe's family as they labored to get through each day.  In addition to the revelations that their daughter had been sexually assaulted, Jane's parents had three other children who needed their attention, Jane's parents had to work, get

---

[2] While Jane had not told her parents or any authority figure what had happened, she did confide in a couple of friends.  One of these friends told their parent who informed Jane's mother.

four children to school and to extra-curricular activities, and take care of Jane, an

emotionally fragile child.

67. While Jane's mother attempted to communicate with Anderson about a second meeting for

Jane to talk with Anderson about the assaults, it was difficult to arrange.  The holidays were

approaching and the priority was to see to the needs of Jane and the family.   Jane's mother

requested that Anderson contact her after the first of the year.  Anderson failed to do so.

68. On March 1, 2017, without the benefit of a subsequent meeting, Anderson sent a letter to

Jane Doe's parents stating that she had concluded the Title IX investigation and found no

substantiation of sex-based harassment.

69. Anderson stated that, at the November 22, 2016, meeting, Jane Doe "declined to answer

most of our questions" and further stated that Jane Doe's parents "denied" subsequent

requests for follow-up interviews.

70. Any investigator properly trained in Title IX and forensic interviewing techniques of young

sexual assault victims should have known how difficult it would be for Jane Doe to speak

about the assaults and should have conducted the investigation accordingly.

71. Further, neither Jane Doe nor her mother refused to speak to Anderson and Jane Doe's

parents never "denied" any requests.   When Jane Doe's mother asked Anderson for

documentation Anderson had attempted to contact Jane Doe, Anderson was unable to

produce any documentation.   Jane Doe's mother is an involved parent, and she would not

ignore any attempt that a school official made to reach out to her or any member of Jane

Doe's family.

72. The burden was on Anderson as the investigator to make contact, not on the victim.

73. Anderson's March 1, 2017, letter additionally stated that the school would nevertheless ensure that Roe2 was separated from Jane Doe by changing his class schedule and lunch assignment. This did not happen.

74. After the sexual assaults and harassment became known, Roe2 told his tennis teammates, his friends, and other students that Jane Doe "crazy", was lying about everything, and that she was "framing" him.

75. Subsequently, throughout her remaining attendance at Gull Lake High School, other students would call Jane Doe a "slut" and a "liar" and accuse her of framing Roe2. Principal Eastman was made aware of this bullying behavior in April 2017.

76. Further, after the third trimester began, Jane Doe went to her math class only to find Roe2 also in the class.

77. Jane Doe immediately left class, hysterical, and called her mother who then contacted Eastman. Jane Doe's mother immediately went to the school to meet with Principal Eastman. Eastman became angry with Jane Doe's mother in front of school office personnel, including displaying a clenched fist. Eastman appeared angry that he had to deal with the situation and did not appear to be at all sympathetic or understanding about Jane's fear and anxiety at seeing her attacker in her math class.

78. Further, both Jane Doe and Roe2 were in band together. Eastman made it clear that Roe2 would be allowed in band class beginning the fall of 2018.

79. Jane Doe felt so unsafe in school that she began eating lunch in the choir room instead of the school cafeteria to avoid confrontations with Roe2. Jane Doe communicated her fears to Principal Eastman from 1/2017 through 4/2017. Eastman told Jane Doe to "get over it." Eastman refused to do anything to address Jane Doe's concerns.

80.   After they received the March 2017 letter, Jane Doe's parents contacted Anderson for a follow-up meeting.   Anderson was unable to provide documentation that she had indeed tried to contact Jane Doe and her family, despite Anderson's representation that she possessed documentation that supported this representation.

81.   In November,2016, Jane Doe's mother notified the county sheriff of the sexual assault allegations and the physical assault allegations and a criminal investigation commenced.

82.   On April 10, 2018, Roe2 pled guilty to Assault and Battery.   John Roe2 was ordered to stay away from Jane Doe.

83.   John Roe's parents would later show up at Jane's Doe's workplace attempting to intimidate her.

84.   Upon information and belief, contrary to school district policy, Roe2 was never disciplined by the school district for assaulting Jane Doe, but he was later expelled for another incident unrelated to Jane Doe.

85.   After the assaults and harassment, and during the continuation of her high school years, Jane Doe suffered from headaches, stomach pain and ulcer, anxiety, depression, inability to sleep.  Jane was placed on medication.  Further, Jane's grades plummeted, and she dreaded attending school.  Jane Doe eventually changed schools to avoid encountering Roe2.

86.   After notifying the school district of the sexual assaults and before the March 1, 2017 letter from Anderson, Jane Doe was not informed of her Title IX rights or what services were available to her under Title IX.

87.   Jane Doe suffered sex-based harassment that was pervasive and objectively offensive.

88.   The sex-based harassment deprived Jane Doe of access to the educational opportunities or benefits of the school.

89. School District Officials had the authority to take remedial action to correct the sex-based harassment.

90. The School District failed to protect Jane Doe, choosing instead to protect Roe2, thereby acting with deliberate indifference to the sex-based harassment.

91. Jane Doe was afraid to return to school, her grades suffered, her health suffered, she was not offered accommodations or given adequate protection, was denied a normal childhood, was denied her high school years, was denied her right to enjoyment of and an opportunity for a free and appropriate public education.

92. Jane Doe requires mental health counseling and medication to cope with the multiple assaults and harassment.

93. The Defendants' conduct was such that students in Jane Does' circumstances would be chilled from reporting instances of sexual harassment or abuse in the future.

94. As a direct and proximate result of the harassing educational environment created by the Defendants' deliberately indifferent response to the multiple assaults and sexual harassment, as well as violations of her Fourteenth Amendment rights, Jane Doe has suffered and continues to suffer psychological damage, emotional distress, resulting physical ailments, including but not limited to, headaches, stomach pain, ulcer, depression and inability to sleep, and her future relationships have been negatively affected.

95. Jane Doe has also been deprived of a normal childhood education due to the Defendants' conduct and the resulting educational environment.

96. Jane Doe has also been damaged by missed educational opportunities and her future earnings capabilities have been damaged by Defendants' conduct and the resulting hostile educational environment.

**COUNT 1**
**VIOLATION OF TITLE IX**
**AS TO GULL LAKE COMMUNITY SCHOOLS**
**(20 U.S.C. § 1681, *et. Seq.*)**
**The School's Deliberate Indifference to Sexual Harassment**

Paragraphs 1 through 96 are incorporated by reference as if stated in full herein.

97. The sex-based harassment articulated in the Jane Doe's common allegations was so severe, pervasive, and objectively offensive that it deprived Jane Doe of access to educational benefits provided by the school.

98. The Defendant School District created and/or subjected the Jane Doe to a hostile educational environment in violation of Title IX of the Education Amendments of 1972, 20 U.S.C § 1681 (a) ("Title IX"), because

    a) Jane Doe was a member of a protected class

    b) she was subjected to sexual harassment in the form of a multiple sexual assaults by another student;

    c) she was subjected to harassment based on her sex; and

    d) she was subjected to a hostile educational environment created by the School District's lack of effective and appropriate policies and procedures to properly prevent, investigate, and address the sexual assaults.

99. The Defendants had actual knowledge of the sexual assaults and harassment.

100. The Defendants' failure to appropriately respond to the sexual assaults resulted in Jane Doe, based on her sex, being excluded from participation in, being denied the benefits of, and being subjected to discrimination in the School District's education program in violation of Title IX.

101. The Defendant School District failed to take effective and/or appropriate remedial steps to resolve the complaints of sexual assault and instead acted with deliberate indifference toward Jane Doe.

102. The Defendant School District persisted in its actions and inaction even after it had actual knowledge of the harm suffered by the Jane Doe.

103. The Defendant School District engaged in a pattern and practice of behavior designed to discourage and dissuade students and parents of students who had been sexually assaulted from seeking assistance and protection.

104. This policy constitutes disparate treatment of female students and has a disparate impact on female students.

105. The Jane Doe has suffered psychological damage, emotional distress and resulting physical ailments, as a direct and proximate result of the Defendants' deliberate indifference to her rights under Title IX.

**COUNT II**
**1983 VIOLATION AS TO DEFENDANT GULL LAKE**
**COMMUNITY SCHOOLS, AND DEFENDANTS RUNDLE,**
**EASTMAN, AND ANDERSON**
**(42 U.S.C. § 1983)**

Paragraphs 1 through 105 are hereby incorporated by reference as if set forth in full herein.

106. Under the Fourteenth Amendment, Jane Doe had the right as a public-school student to personal security and bodily integrity and Equal Protection of Laws.

107. Defendants Rundle, Eastman and Anderson were state actors acting under the color of state law.

The Defendants each subjected Jane Doe to violations of her right to personal security and bodily integrity and Equal Protection of Laws by: failing to adequately and appropriately investigate Roe2's conduct; failing to appropriately discipline Roe2; failing to adequately train and supervise Rundle, Eastman and Anderson; manifesting deliberate indifference to the sexual assaults committed by Roe2 and the harassment committed by other students as well as Roe2.

108. The School District had and continues to have unconstitutional customs and policies of:

   a) Failing to adequately and appropriately investigate evidence of criminal and tortious misconduct against School District students in the nature of violations of their right to personal security, bodily integrity, and Equal Protection of the Laws.

   b) Failing to adequately and appropriately train and supervise School District employees regarding investigating, maintaining, preserving, and protecting students from violations of their right to personal security, bodily integrity, and Equal Protection of the Laws.

109. On information and belief, the School District has followed these unconstitutional customs and policies not only regarding Jane Doe but also regarding criminal and tortious misconduct committed against other School District students.

110. The School District's policies and/or practices constituted disparate treatment of females and had a disparate impact on female students.

111. Defendants Rundle, Eastman and Anderson are or were at the time of the events within policymakers for implementing the School District's unconstitutional policies and customs.

112. Jane Doe has suffered psychological damage, emotional distress and resulting physical ailments from the ongoing sexual assaults fostered as a direct and proximate result of

Defendant School District's deliberate indifference to her rights under the Fourteenth Amendment.

**COUNT III**
**MONELL LIABILITY FOR FAILURE TO TRAIN AND SUPERVISE**
**AS TO RESPONSE TO SEXUAL ASSAULT**
**AS TO DEFENDANT GULL LAKE SCHOOL DISTRICT**
**(42 U.S.S § 1983)**

Paragraphs 1 through 112 are hereby incorporated by reference as if set forth in full herein.

113. Defendants Rundle, Eastman and Anderson were "state actors" working for the Gull Lake Community Schools, a federally funded school system.

114. Defendants Rundle, Eastman and Anderson acted under "color of law" when inadequately responding to Jane Doe's multiple sexual assaults and harassment on school grounds.

115. Defendants Rundle, Eastman and Anderson failed to preserve Jane Doe's constitutional rights to equal protection as guaranteed by the Fourteenth Amendment.

116. Under the Equal Protection Clause of the Fourteenth Amendment, Jane Doe had the right to equal access to an educational environment free from assault, harassment and discrimination.

117. Defendants Rundle, Eastman and Anderson should have known that their response to the sexual assault and harassment must comply with federal law.

118. Defendants Rundle, Eastman and Anderson each violated Jane Doe's right to equal access by:

    a) Failing to take adequate steps to protect Jane Doe;

    b) Treating Jane Doe with deliberate indifference following the assaults and harassment;

c)  Failing to provide a safe, non-retaliatory grievance procedure for students to file complaints of sexual discrimination, including complaints of sexual violence.

d)  Failing to use an appropriate evidentiary gathering process on which to base a preponderance of the evidence standard to resolve complaints of sex discrimination in grievance procedures.

119.  Defendant Gull Lake Community Schools violated Jane Doe's Fourteenth Amendment rights to equal protection by failing to properly train and supervise its employees as to these investigative requirements.

120.  These policies and/or practices constituted disparate treatment of females and had a disparate impact on female students.

121.  Defendants actions and lack of actions were the proximate cause of Jane Doe's psychological damage, emotional distress and resulting physical ailments because of Defendant School District's deliberate indifference to her right to equal protection under the Fourteenth Amendment.

## COUNT IV
### Discrimination in violation of Michigan's Elliott-Larsen Civil Rights Act
### (Against all Defendants)
### MCL 37.2101 *et seq.*

Paragraphs 1 through 121 are hereby incorporated by reference as if set forth in full herein.

122.  Defendant Gull Lake School District is an educational institution as defined in the ELCRA. MCL 37. 2401 *et seq*. Plaintiff Jane Doe was an individual enrolled as a student covered by and within the meaning of Michigan's Elliott-Larsen Civil Rights Act (ELCRA), MCL 37.2401 *et seq.*

123.  The individual defendants are agents of Gull Lake School District and persons under the

ELCRA.

124. The ELCRA prohibits discrimination in education based on sex, which includes sexual harassment and sexual assault. MCL 37.2102; MCL 37.2.103(i).

125. ELCRA, MCL § 37.2701(a) provides that no person shall retaliate or discriminate against a person because the person has opposed a violation of this act, or because the person has made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing under the Elliott-Larsen Civil Rights Act.

126. The Defendants' failure to appropriately respond to the sexual assaults resulted in Jane Doe, based on her sex, being excluded from participation in, being denied the benefits of, and being subjected to discrimination in the School District's educational program in violation of ELCRA's prohibition on sex discrimination in educational institutions.

127.  The actions of Defendants, by their agents, employees and representatives, were intentional, in deliberate disregard for the rights and sensibilities of Plaintiff.

128. As a direct and proximate result of the Defendants wrongful acts and omissions, Plaintiff has sustained injuries and damages, including, but not limited to, psychological damage, emotional distress and resulting physical ailments.

WHEREFORE, Jane Doe respectfully requests judgment in her favor and against the Defendants as follows:

a) Compensatory Damages for Jane Doe's psychological damages, emotional distress and resulting physical ailments, including but not limited to, headaches, ulcer, depression and inability to sleep, and her family's unreimbursed out-of-pocket expenses incurred due to these circumstances;

b) Punitive damages;

c) Injunctive relief requiring the School District to take effective steps to prevent sex -based discrimination and harassment, including sexual assault, in its education programs; fully investigate conduct that may constitute sex-based harassment and/or sexual assault; and mitigate the effects of harassment and/or assault including by eliminating any hostile environment that may arise from or contribute to it.

    a. Statutory Interest

    b. Costs; and

    c. Reasonable attorney fees.

<strong>JURY DEMAND</strong>

Now comes Plaintiff, JANE DOE through her next friend, AMY SCHWARTZ, by and through her attorneys, KAREN TRUSZKOWSKI and JULIE A. JACOT, and demands a trial by jury.

Dated:  November 21, 2018

*Attorneys for Plaintiff:*

Karen Truszkowski (P56929)
Temperance Legal Group PLLC
503 Mall Court #131
Lansing, MI  48912
844-534-2560 phone
800-531-6527 fax
Karen@temperancelegalgroup.com

Julie A. Jacot (P43443)
Jacot Law PLLC
1044 N. Irish Road, Ste A
Davison, MI  48423
810-653-9526 phone
810-658-2444 fax
juliejacotlaw@gmail.com